IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

VICTOR M. JAVITCH, RECEIVER,

                    Plaintiff,                  Case No. 3:03 CV 972

-vs-

                                          MEMORANDUM OPINION

TODD ASSOCIATES, INC., et al.,

                    Defendant.

KATZ, J.

## BACKGROUND

*A. Initial Background*

This case arises out of the *Liberte v. Capwill*, Case No. 5:99 CV 0818 (N.D. Ohio) debacle which has generated its own universe of litigation. Without belaboring the already familiar history of this litigation[1], a brief overview of the facts underlying this litigation is sufficient for purposes of this discussion. James A. Capwill's ("Capwill") company, Viatical Escrow Services ("VES"), was the escrow agent which handled the viatical investment funds. Capwill used funds from VES, some of which were transferred to Capital Fund Leasing ("CFL"), another wholly-owned corporation, to fund accounts with the Defendant. Some of these accounts were in the name of VES and CFL. Capwill's assets were eventually placed under control of a receiver, he was criminally prosecuted for actions related to these funds, and he now is serving his sentence in a federal facility. The civil litigation left in the wake of his and others' actions

---

[1] For a case chronology, *see Liberte Capital Group v. Capwill,* 299 F.Supp.2d 799, 800-801 (N.D. Ohio 2002).

involves two classes of investors and a number of various interested parties. The *Liberte* case spawned a numerosity of litigation against insurance agents, brokerage houses and banks, among others. The present litigation also has its genesis in the *Liberte* action.

*B. Present Action*

In March 1997, Capwill formed Viatical Escrow Service ("VES"), a viatical escrow company and CWN, a/k/a Capwill & Company, Capwill's accounting service. Lynn Day Wilson ("Wilson"), a former employee of Wesley, Mills & Company ("Wesley"), joined Capwill as a partner in VES. Both VES and CWN provided services to funding companies, Liberte Capital Group LLC ("Liberte") and Alpha Capital Group LLC ("Alpha"). VES was charged with holding escrow monies of investors in viatical settlements and temporarily investing those funds.

Shortly after forming VES, it is undisputed that Wilson contacted Todd Associates, Inc. ("Todd") to obtain liability insurance coverage for the new entities. Wilson contacted Timothy Fitzpatrick ("Fitzpatrick") because Todd had provided coverage for Wilson's former employer, Wesley, and VES and CWN would be engaged in similar work. Fitzpatrick proceeded to secure coverage in the forms of an accountants professional liability policy and employee dishonesty coverage.

There is no dispute that Chicago Insurance Company issued an accountants professional liability policy for the periods March 20, 1997 to March 20, 1998, with limits of $2 million dollars. At approximately the same time, Crum & Forster Insurance issued a policy for commercial crime coverage, specifically a blanket employee dishonesty policy with limits of $750,000 coverage. An endorsement to the employee theft policy clearly states as follows:

> **12. Ownership of Property**: The property covered under the EMPLOYEE DISHONESTY COVERAGE FORM is limited to property that you own or lease. This insurance provides no rights or benefits to any other person or organization.

In May 1997, at the request of the insured Todd requested increasing CWN's bond limit to $500,000 to $750,000 per CWN's request. Shortly thereafter, Todd advised CWN that coverage at either level was available. Contained in the fax of May 12, 1997 addressing this issue was the following proviso: "INCLUDES EXCLUSION ENDORSEMENT FOR LOSS OF CLIENTS PROPERTY." (Fitzpatrick Dep., Ex. 24.) Per correspondence dated May 21, 1997, Todd confirmed coverage was bound on the higher limits of the employee dishonesty bond through Crum & Forster. (Id., Ex. 27.)

Just a month later, on June 27, 1997, Fitzpatrick wrote the following to Capwill regarding the employee dishonesty policy:

> The intent of this letter is to clarify "employee dishonesty" coverage under policy #626 020282 8 with Crum & Forster Insurance. Based on conversations with you, it was determined that in order for coverage to apply to Lynn Day [Wilson], an internal restructuring would be needed for her to fulfill the definition under the policy as an "employee", please refer to page 3 of 4 on policy for definition. It was further concluded that these measures would be taken in oreder[sic] for the policy to respond to a covered "occurrence" under the above mentioned policy.
>
> Please call me if you have any other questions or concerns regarding this policy.

(Id. at Ex. 29.)

In January 1998, Capwill bought out Wilson's interest in VES and she became an employee.

In March 1998, upon renewal of the employee dishonesty coverage, the bond was increased to $2 million dollars. Approximately one month later, Todd was advised that $3 million dollars in coverage was the maximum limit which could be offered to CWN regarding their

3

professional accountants coverage. At around the same time, Wilson left VES but remained a consultant for them until April 1999.

Later that fall, CWN's request to increase their limits under the professional accountants coverage was doubled to $6 million dollars. In December 1998, Todd was advised by the bond manager that the underwriter of the employee dishonesty coverage had been contacted by several of Capwill's clients seeking to confirm coverage. The bond manager, Pamela Hetrick, advised the following:

> It appears that Capwill may not understand the coverage they currently have, that it does *not* provide coverage for property of others. Should you, or they, wish to add the third party liability, we will need to approach another market.

(Id. at Ex. 45) (emphasis in original).

In April 1999, the *Liberte* action was filed and thus began the odyessy through the world of viatical litigation.

In May 2003, the Receiver, Victor M. Javitch ("Receiver") filed this action against Todd Associates and H.H. Landy Insurance Agency for actions relating to the retention of insurance coverage by Capwill as it pertained to VES. Specifically, the Receiver asserts that the Defendants were negligent in their failure to procure the proper insurance coverage to protect against theft, dishonesty, or misappropriation of escrow funds by Capwill. In addition, the complaint asserts a claim for breach of express or implied contracts. As H.H. Landy has been dismissed by the Plaintiff, only the claims against Todd Associates remain for adjudication.

This matter is before the Court on Defendant's motion for summary judgment and motion to strike. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons stated below,

Defendant's motion for summary judgment is denied and the remaining motions are denied as moot.

## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

*A. Summary Judgment Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56©). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some

type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

*B. Negligence*

For a party to establish negligence, they must demonstrate: " (1) existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury that is the proximate cause of the defendant's breach." *Wallace v. Ohio Dept. of Commerce,* 96 Ohio St.3d 266, 274, 773 N.E.2d

1018, 1025-1026 (2002) citing *Mussivand v. David,* 45 Ohio St.3d 314, 318, 544 N.E.2d 265, 270 (1989). The existence of a duty in a negligence action is a question of law. *Id.*

The Ohio Supreme Court has spoken on the duty of a sales agency as follows:

An insurance sales agency has a duty to exercise good faith and reasonable diligence in obtaining insurance requested by its customer, and in advising a customer who is relying on the agency's expertise.

*First Catholic Slovak Union v. Buckeye Union Ins. Co.,* 27 Ohio St.3d 169, 499 N.E.2d 1303 (1986) at Syllabus; *Stuart v. Nat'l Imdemn. Co.,* 7 Ohio App.3d 63, 66, 454 N.E.2d 158, 162-163 (1982). Stated differently, "when the agency knows that the customer is relying upon its expertise, the agency may have a further duty to exercise reasonable care in advising the customer." *The Island House Inn*, *Inc. v. State Auto Ins. Co.,* 150 Ohio App.3d 522, 526, 782 N.E.2d 156, 159 (2002), citing *Stuart, supra*.

The corresponding duty of the insured is to "examine the coverage provided and [they are] charged with knowledge of the contents of his or her own insurance policies." *Craggett v. Adell Ins. Agency,* 92 Ohio App.3d 443, 453, 635 N.E.2d 1326, 1332-1333 (1993) (citation omitted).

The duty on behalf of the agency may blossom into a fiduciary relationship where "special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Ed Schory & Sons, Inc. v. Francis,* 75 Ohio St.3d 433, 442, 662 N.E.2d 1074 (1996). Such a fiduciary relationship "cannot be unilateral, both parties must understand that a special trust or confidence has been reposed." *Slovak v. Adams,* 141 Ohio App.3d 838, 846, 753 N.E.2d 910, 847 (2001). Moreover, the party relying on the representations is charged with the duty to establish the existence of such

a relationship by a preponderance of the evidence. *Craggett,* 92 Ohio App.3d at 451, 635 N.E.2d at 1331.

*C. Discussion*

In making its determination, this Court has reviewed Defendant's motion for summary judgment, Plaintiff's response, Defendant's reply, and Plaintiff's sur-reply thereto. Additionally, the Court has reviewed the depositions of Timothy Fitzpatrick ("Fitzpatrick"), Lynn Day Wilson ("Wilson") and James A. Capwill ("Capwill").

The position of Todd Associates ("Todd") is grounded in the absence of a duty, breach or proximate cause on the negligence claim, which also is dispositive of the claim sounding in breach of contract. For its part, the Receiver contends that Wilson and Capwill relied upon Todd's expertise in securing coverage sufficient to protect viatical investors, that insufficient coverage existed to cover the ultimate malfeasance of Capwill, or that sufficient coverage could have been structured to have protected the funds of the viatical investors whose escrow monies were held by VES.

The threshold determination to be made by this Court is whether a duty existed on the part of Todd regarding its relationship with Capwill, CWN and VES. In reading the above-mentioned depositions, this Court is struck by the complete divergence of material facts. Apart from agreeing that Wilson initially contacted Fitzpatrick regarding coverage for the newly formed entities in 1997, the details of who requested what and who relied on whom cannot be ascertained at this juncture. Fitzpatrick denied that Capwill or Wilson wanted the escrow monies protected from theft or dishonesty (Fitzpatrick Dep., p. 105). Fitzpatrick also claims that he never met with Capwill (Id., p.106) and did not make recommendations on amounts of coverage (Id., p. 106).

8

Consistent throughout his deposition, Fitzpatrick repeated that he was acting at Wilson's request to provide the same coverage as Wesley. (Id., pp. 107-108, 113, 124-125, 135, 252.) Fitzpatrick testified that he was not asked to assess coverage for VES (Id., p. 113) nor was he asked to secure third-party coverage (Id., p. 117, 230, 238, 250, 253). Even as late as December 1998, when he received the letter from the bond manager, Fitzpatrick did not think there was confusion on the type of coverage in place (Id., p. 217). This was because, in Fitzpatrick's view, "he [Capwill] had the coverage in place that he requested." (Id., p. 222.)

The testimony of Wilson, in particular, was that VES was requesting insurance which would protect the investors' money. (Wilson Dep. Vol 1, p. 46-47.)

"Whether an agent has negligently failed to procure insurance is ordinarily a question of fact." *Minor v. Allstate Ins. Co.,* 111 Ohio App.3d 16, 22, 675 N.E.2d 550, 554 (1996). In this case, what was requested of Todd regarding insurance coverage, advice with respect thereto, etc, is within the province of the fact finder. Todd's argument that Capwill or Wilson failed to complain about sufficient coverage is an affirmative defense to be asserted at trial. *See Wanner Metal Worx, Inc., v. Hyland-Maclean,* 2003 WL 1826558 *8, 5th Dist. (2003), citing *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.,* 81 Ohio St.3d 677, 681, 693 N.E.2d 271 (1998). As there clearly appears to remain a genuine issue of material fact, summary judgment cannot be granted as a matter of law.

## **CONCLUSION**

For the reasons stated above, Todd's motion for summary judgment (Doc. No. 134) is denied. Todd's motion in limine (Doc. No. 160) and motion to strike (Doc. No. 161) are denied as

moot. Plaintiff's motion for leave to file its motion for summary judgment instanter (Doc. No. 173) is also denied as moot.

The trial date of January 17, 2006, is confirmed. Counsel are reminded that a stipulation as to undisputed facts for use at trial, and for submission to the jury in the event of a jury trial must be filed with the Court on or before eleven days before trial. Copies of any documents to which the parties have stipulated should be appended to the stipulation.

Complete trial briefs and motions in limine, if any, shall be filed on or before January 3, 2006. A complete trial brief includes: (a) a statement of the facts; (b) a discussion of the controlling law; (c) a list of proposed witnesses along with a brief description of the subject matter of the testimony of each witness; (d) an index of all proposed exhibits containing a brief description of each exhibit; (e) a discussion of any evidentiary issues likely to arise at trial; (f) proposed voir dire questions; and (g) proposed jury instructions.

The proposed witness list must contain the complete names of witnesses, and must be filed with the trial brief. Any witness who is not identified on the witness list, or who is identified only by initials or title (*e.g.*, "recordkeeper") WILL NOT BE PERMITTED TO TESTIFY.

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
SENIOR U. S. DISTRICT JUDGE